**Application of John F. SEWARD.**
**Patent Appeal No. 6995.**

United States Court of Customs
and Patent Appeals.
Nov. 14, 1963.

———◆———

Barnes, Kisselle, Raisch & Choate, Alfonse J. D'Amico, Detroit, Mich., for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

Seward seeks to patent a method of treating acute asthmatic attacks by incorporating from three to four hundred milligrams of theophylline in an aqueous alcoholic solution which is orally administered in a single dose.

Seward says his treatment
"* * * was predicated upon two very unexpected findings. One unexpected finding was that such a large orally administered dose of theophylline, when mixed with alcohol, produced substantially no gastric upset and the other was that a single large dose of orally administered theophylline would produce sufficiently high theophylline-blood levels in a matter of minutes as to terminate an acute asthmatic attack in most patients."

The examiner and the Board of Appeals held that Seward's method would be obvious and, therefore, unpatentable, in view of the disclosures in the Physicians Desk Reference [1] (PDR) and Krantz & Carr.[2]

We think Seward fairly states the specific question to be decided in saying:
"* * * Would the PDR listing relied upon induce the average physician to administer orally a single large dose of 300 mg. to 400 mg. of theophylline in the preparation described in the reference for the purpose of terminating an acute asthmatic attack?"

The PDR reference is a listing of Sherman Laboratories, Seward's assignee, of the theophylline preparation referred to in the claims on appeal, and reads:

"ELIXOPHYLLIN

"COMPOSITION: Each tablespoonful (15cc.) contains theophylline 80 mg. and alcohol 3 cc. in a sugarfree base.

"ACTION AND USES: Through its circulatory effects Elixophyllin aids in decreasing the number and severity of anginal attacks. The theophylline in hydro-alcoholic solution provides more rapid absorption and the moderate dose of alcohol fosters mental rest and tranquility; *in asthma, when parenteral therapy is impracticable. Provides fast ab-*

1. Physicians Desk Reference, 10th Ed., 1956 (Received Dec. 25, 1955) page 546, "Elixophyllin."

2. "Pharmacologic Principles of Medical Practice" Krantz & Carr, 4th Ed. 1958, pages 917, 918.

*sorption of theophyllin with virtually no gastric intolerance.*

"ADMINISTRATION AND DOSAGE: In angina: One tablespoonful between meals and two at bedtime.

"*In asthma:* Two tablespoonfuls *for relief of attacks, repeated as required.*" (Italics supplied)

The publication by Krantz & Carr states:

"One of the disadvantages of the various theophylline preparations is the gastrointestinal distress which they cause in a large number of individuals. This becomes particularly manifest when the dosage levels are increased. Indeed this is unfortunate because it hampers intensive therapy with the drug and a more complete exploration of its possible benefits.

\* \* \* \* \* \*

"It is our opinion that the limitation of the dosage, owing to gastrointestinal symptoms, and the assumption that absorption is complete, is likely responsible for variations in results observed by various investigators. \* \* \* "

It was pointed out by the board that Krantz & Carr disclose that blood levels of theophylline vary to a great extent in different individuals on the same dosage schedule.

Seward makes the following argument in his brief:

"It is submitted that to the average physician who, after all, is the man skilled in the art to which the PDR reference relied upon by the Examiner is directed, upon reading of the reference would not have more than doubled the dose recommended in the reference to terminate an acute asthmatic attack. He would not have been tempted to do this because he knew that with respect to theophylline preparations, the time-proved treatment for acute asthmatic attacks was parenteral therapy. He knew that an acute asthmatic attack is an emergency situation requiring extreme caution. He knew that overdosages of theophylline preparations had sometimes proved fatal. He knew that oral dosages of theophylline products were not efficacious in the treatment of an acute asthmatic attack. He knew that oral dosages of theophylline products had been successfully used for controlling chronic asthma. He knew that in addition to Elixophyllin, there were numerous other oral preparations suitable for treating chronic asthma. He knew that the recommended dosage prescribed in the reference fell within the range commonly used in the treatment of chronic asthma. He knew that these other theophylline preparations were useful for 'relief of asthmatic attacks' and knew that when used in this context, this phrase meant *chronic* asthmatic attacks."

Even if Seward had properly proved those allegations, we agree with the board that the average physician could fairly be expected to increase the oral dosage recommended by PDR.

It should be remembered that Seward's preparation is identical with the PDR preparation. Both are administered orally. Both are in an aqueous alcohol solution. Both are intended to relieve asthmatic attacks. The only material difference is that Seward claims from 300 to 400 mg.[3] of theophylline in a single dose whereas PDR suggests 160 mg. to be "repeated as required," and with the express assurance that no gastric distress will result.

On this record we are unable to agree that the "attacks" mentioned in PDR would be interpreted by a physician to mean only the "chronic" type. In view of the suddenness and limited duration implied by the word "attacks" when ap-

---

3. Seward concedes that it had been known that human beings could tolerate dosages as high as 400 mg. of theophylline when administered parenterally.

plied to illnesses, and that "chronic" is generally associated with illnesses of long duration, we see no valid reason why the PDR "attacks" can properly be held to be limited to only "chronic" cases.

We have given appellant's arguments full consideration but are far from convinced that the board erred.

The decision is affirmed.

Affirmed.